IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER WELCH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 05-1934 |
| WILLIAM PORTER | : | |

## MEMORANDUM

AND NOW, this 14th day of March, 2006, "Defendant's Motion for Summary Judgment" will be granted. Fed. R. Civ. P. 56.[1]

This is an employment discrimination case. Beginning in 1993, plaintiff Heather Welsh was employed by the U.S. Postal Service as a regular Postal Service employee at the Southeastern Process and Distribution Center in Philadelphia. Deposition of Heather Welsh, at 13, Exhibit "1" to defendant's motion. In August 1994, an African-American employee, Sheila Carter, threatened plaintiff, who is Caucasian.[2] Welsh N.T., at 15-21, 47. In December 2004, plaintiff stopped working because of stress. Welsh N.T., at 31-32.[3] In

---

[1] "Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law. . . . In determining whether a genuine issue of fact exists, we resolve all factual disputes and draw all reasonable inferences in favor of the nonmoving party." Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 435 (3d Cir. 2006) (citations omitted).

[2] At deposition, plaintiff testified that Carter "charged with me with her finger in my face, backing me into a wire container, and she said, 'I'm 2 inches off your ass, you think you're hot shit, you better watch it. . . . You better watch it, you're going to get it after work when you're not expecting it.' and she punched her hand in her fist. She said, "You're shit, your mom's shit, and your while family's shit.'" Welsh N.T., at 15, 20-21.

[3] In the interim, plaintiff was told that she was viewed as the aggressor in the incident, and received a third letter of warning for failing to complete an eight-hour shift. Welsh N.T. at 24, 26-28.

November 1995, her worker's compensation claim was approved. Welsh N.T., at 32-33. At that time, she agreed to return to limited duty, and was assigned to a different facility from Carter. Welsh N.T., at 33-34. Thereafter, she was assigned to seven facilities during her first seven months of limited duty. In May 1996, she was assigned to Downingtown where she worked until May 1998. Welsh N.T., at 46. In May 1998, plaintiff was notified to return to her former full-time status at the Oaks Annex of the PDC. Welsh N.T., at 38; Declaration of Jeffrey Bergen, at ¶¶   She went back for only one day, stating that she was afraid of the location and the other employees, and was afraid that she might encounter Carter there.[4] Welsh N.T. at 38-45.

On May 18, 1998, plaintiff filed an EEO action, alleging race discrimination based on: (1) the May 1998 transfer to the Oaks Annex; (2) the August 1994 assault by Carter; and (3) the assignment of plaintiff to seven facilities in seven months between November 1995 and May 1996. June 8, 1998 letter from William E. Bostick, EEO Counselor to Leo Lynn, Appeals Review Analyst, Exhibit "3" to defendant's motion. The latter two claims were dismissed as untimely because plaintiff did not contact an EEO counselor within 45 days of the incidents giving rise to the claims. June 24, 1998 Partial Acceptance/Partial Dismissal of Formal EEO Complaint, Exhibit "4" to defendant's motion. Plaintiff did not appeal the dismissal of these claims. January 6, 2005 Final Agency Decision, Exhibit "5" to defendant's

---

[4] Plaintiff was assigned to the Oaks Annex because it is a satellite location, not in the same location as the Southeastern PDC, where Carter continued to work. Bergen Declaration at ¶ 8.

motion.[5]

According to defendant, plaintiff cannot establish a prima facie case of race discrimination. Under the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), plaintiff must first establish a prima facie case of discrimination. To do so, she must show that (1) she is a member of a protected class; (2) she was qualified for the positon; (3) she sufferd an adverse employment action; and (4) similarly situated employees, not of the protected class, received more favorable treatment. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993).

In order to prove a prima facie case, plaintiff must show that a non-Caucasian employee was returned to full-time duty under circumstances or conditions different from plaintiff. Defendant relies on the affidavit of Jeffrey L. Bergen, who in April 1998 was Plant Manager at the Southeastern PDC. The affidavit states that, in 1998, Bergen requested all limited-duty employees to report for review of their medical records for return to full-time duty. He determined that there was no medical justification for plaintiff to remain on limited duty and returned her to her former assignment, as required by U.S. Postal Service policies.

---

[5] Plaintiff's memorandum in opposition to defendant's motion states that plaintiff did appeal the dismissal of the two claims described. Memorandum, at 2. The memorandum refers to an "appeal document" and "the proof of mailing that it accompanies," as ""Exhibit A." Id. There is no Exhibit A to plaintiff's memorandum. Additionally, plaintiff's affidavit, included with the memorandum, states that plaintiff did appeal the dismissed charges. The affidavit, however, is not signed. These apparent deficiencies were noted in a February 16, 2006 letter from Assistant United States Attorney Barbara Rowland. The deficiencies were not corrected, and there is, therefore, no record evidence that plaintiff appealed the dismissed charges.

As an accommodation to her, he did not assign plaintiff to her former post at the PDC, given the earlier incident with Carter. Bergen Declaration, ¶¶ 3-10. Plaintiff does not dispute this, but suggests that Carter, and not plaintiff, should have been moved to a different duty location. Plaintiff's memorandum, at 5. Carter, however, is not an appropriate comparator because she was not "similarly situated" to plaintiff - there is no evidence that she was on limited duty, or was ever removed from and returned to the PDC. Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987) (plaintiff must demonstrate that similarly situated non-protected employees were treated more favorably).[6]

Plaintiff has not met her burden to establish by competent evidence that she was treated less favorably than other similarly situated employees. Consequently, she has not stated a prima facie case of discrimination.[7]

BY THE COURT:

 *s/ Edmund V. Ludwig* 
Edmund V. Ludwig, J.

---

[6] Plaintiff also refers to Sondra Williams, an African-American female who was returned from limited duty to the PDC, rather than an annex. Plaintiff's memorandum, at 5. However, there is no evidence of Williams' return to full-time duty.

[7] Defendant also contends that it had a legitimate, non-discriminatory business reason for its assignment of plaintiff to the Oaks Annex in May 1998. Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994). Specifically, the declaration of Jeffrey Bergen establishes that he reviewed plaintiff's records and found her capable of returning to full time duty, and that he assigned her to her former job (mail handler) on her regular tour (Tour Three) at a location different from Carter out of sensitivity to plaintiff's feelings. Bergen Declaration, ¶¶ 5-8. Plaintiff has not submitted any evidence that the reason for her assignment was pretextual. It is not necessary to reach this issue, in light of the finding that plaintiff has not established a prima facie case of discrimination.